UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:07-CV-00058

**JAMES DUNCAN, et al.,**                                                                           **PLAINTIFF**

**V.**

**DANA CORPORATION PENSION PLAN
FOR HOURLY-RATE EMPLOYEES OF THE
SPICER HEAVY AXLE AND BRAKE DIVISION-
HENDERSON PLANT**                                                                                   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions for judgment on the administrative record by Plaintiffs James Duncan et al. [DN 29] and Defendant Dana Corporation Pension Plan [DN 28]. Fully briefed, this matter is ripe for consideration. For the following reasons, the Defendant's motion for judgment on the record is **GRANTED** and the Plaintiffs' motion for judgment on the record is **DENIED**.

## I. FACTS

Dana Corporation ("Dana") purchased the assets of Eaton Corporation Axle Dvision in December 1997. Afterward, Dana signed an agreement with United Steelworks Union assuming the existing Eaton collective bargaining agreement. Plaintiffs James Duncan, Tommy Hallmark, and Kenny Skaggs are former collective bargaining unit employees of Dana Corporation at Dana's Henderson, Kentucky plant ("Henderson Plant"). (JA-AR00033, ¶2; JA-AR00040, ¶¶2-3; JA-AR00055, ¶2). Their claims arise under Section 502(a)(1)(B)

of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. Section 1132 (a)(1)(B).  Between 2001 and 2002, the Plaintiffs filed for Social Security disability benefits, at a time when they retained their respective seniority under the applicable Dana Collective Bargaining Agreement ("CBA") (JA-AR00033, ¶¶2, 5; JA-AR00040, ¶4; JA-AR00055, ¶5).  Thereafter, they filed for disability benefits under the Henderson Pension Plan ("Dana Plan" or "Plan") and were found to meet the Plan's requirements. (JA-AR00033, ¶5; JA-AR00040, ¶6; JA-AR00055, ¶4).  Plaintiffs never received substantive benefits under the Dana Plan, however, because those benefits were fully offset by what they received through Social Security disability.  (JA-AR00033, ¶7; JA-AR00040, ¶6; JA-AR00055, ¶6; see also JA-AR00720; JA-AR00718).

Plaintiffs appealed the offset decision.  They argued that (1) the Dana Plan should have been drafted to include the disability benefit offset provision from the 1982 Eaton Plan rather than the 1989 Eaton Plan; (2) Dana should not be allowed to offset Plaintiffs' disability benefits because Dana failed to offset such benefits for other employees in the past; (3) the disability offset provisions of Article IV, Section 1 of the Dana Plan should not apply to Plaintiffs because they filed for Social Security disability benefits within two years of losing their Dana seniority; and (4) a "more generous" provision in the 1998 Dana Summary Plan Description ("SPD") conflicts with and should trump the disability offset provision in the Dana Plan. (JA-AR00022-00024; JA-AR00024-00025; JA-AR00025-00027).

The Committee denied the appeal on January 15, 2007. (JA-AR00001-00002). First, it rejected Plaintiffs' argument that the provisions of the Social Security disability offset

provisions in the 1982 Eaton Plan applied. According to the Committee, Dana was obligated to replicate the terms of the pension plan Eaton maintained for the Henderson bargaining unit at the time of the 1997 buyout, not any earlier plan, and the Dana Social Security disability offset provision was "identical" to the parallel section in the then-operative 1989 Eaton Plan. Id. Second, the Committee dismissed Plaintiffs' assertion that the failure to offset pension disability benefits against Social Security disability benefits of other employees obligated the Committee to do the same for Plaintiffs. It stated that it could not "reasonably ignore or waive a clear plan term simply because that term has not been consistently enforced in the past." Id.

Third, the Committee simply disagreed with Plaintiffs' argument that the Article IV, Section 1 offset should not apply in cases where the employee filed a claim for Social Security disability benefits within two years of the date on which he lost his seniority. It concluded that "this exception is intended to apply only when a 'Retired Employee' who has already begun receiving an early retirement or similar pension from the Plan subsequently files a claim for a Social Security disability benefit within his first two years of retirement." Id. Fourth, and finally, the Committee denied Plaintiffs' claim that a provision in the SPD prohibiting offsets controlled because it was more generous to employees. The Committee explained that while there may have been some inconsistency between the various provisions of the SPD, it did "not see how an employee who read [it] could be misled" into believing there was not an offset against Social Security disability benefits. Id.

Plaintiffs filed this action seeking review of the Committee's determination.

3

## II. STANDARD OF REVIEW

A denial of benefits challenged under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001, et seq., is reviewed under a de novo standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or construe the terms of the plan, in which case the decision will be reviewed for arbitrariness and capriciousness. Williams v. International Paper, 227 F.3d 706, 710-11 (6th Cir. 2000); Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998) (en banc). However, "the area within which discretion can be exercised or the amount of discretion exercised depends on the scope of the grant [of authority] . . . . A plan administrator has exactly the amount and type of discretion granted by the plan, no more, and no less." Anderson v. Great West Life Assurance Co., 942 F.2d 392, 395 (6th Cir. 1991).

In this case, the Plan provides that Dana "shall have all such powers and authority as may be necessary to carry out the provisions of this Plan" and "may from time to time establish rules for the administration of this Plan and the transaction of the business of this Plan, and may determine the application of such rules." (JA-AR00434). The Sixth Circuit found that an identical grant of discretion in Johnson v. Eaton Corp., 970 F. 2d 1569, 1571-72 (6th Cir. 1992) was sufficient to "endow the committee with authority to determine the eligibility for benefits within the meaning of *Firestone*." Id. While the Court of Appeals acknowledged that it was a "close" question, it reasoned that the Committee's power to review the denial of claims necessarily entailed the discretion required for the arbitrary and capricious standard of review:

> [Although] the committee is not the first arbiter of a claimant's eligibility, the Eaton plan makes it the final one. In order to exercise this final authority, the committee members must certainly have been entrusted with the authority to exercise their judgment, or discretion, in interpreting and applying the eligibility provisions . . . . Otherwise, the committee's review would be meaningless.

*Id.* at 1572.

The Court therefore applies the arbitrary and capricious standard in the case at bar.

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1993). When applying the standard, a court must decide whether the plan administrator's decision was "rational in light of the plan's provisions." Williams, 227 F.3d at 712 (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1998)). Accordingly, where it is "possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Williams, 227 F.3d at 712 (quoting Davis, 887 F.2d at 693). To put it another way, if the decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence," the decision will be upheld. Elliott v. Metro Life Ins. Co., 473 F.3d 613, 617 (6th Cir. 2006).

### III. ANALYSIS

Plaintiffs contend that the Committee violated the terms of the Dana Plan by offseting their pension disability benefits against their Social Security disability benefits. First, they claim that the Dana Plan should have been drafted to include the disability benefit offset provision from the 1982 Eaton Plan rather than the 1989 Eaton Plan. Second, they contend

5

that a "more generous" provision in the 1998 Dana SPD conflicts with and should trump conflicting provisions in the SPD and in the Dana Plan itself. (JA-AR00022-00024; JA-AR00024-00025; JA-AR00025-00027). And third, they argue that the Committee's application and interpretation of Article IV, Section 1 of the Plan is arbitrary and capricious. The Court addresses these claims in turn.

    A. The 1982 and 1989 Plans

Plaintiffs argue that the terms of the 1998 Dana Plan should be consistent with the 1982 Eaton Plan, which prohibits an offset against Social Security disability benefits. They contend that Eaton made improper changes in its 1989 plan, and that Dana was contractually required to provide a Plan consistent with the terms of Eaton's 1982 plan. Neither issue, however, is properly before the Court. Neither Eaton nor the Union is before the Court, and neither would be a proper party to this ERISA benefits claim. Furthermore, any impropriety with respect to changes between the 1982 Eaton Plan and the 1989 Eaton Plan relates solely to duties Eaton owed to the Union. As for Dana's obligations to the Union, when Dana purchased Eaton's Henderson plant in 1997 it agreed to

> . . . establish a defined benefit pension plan to be effective as of [January 1, 1998], which is substantially similar to the Eaton, Henderson, Kentucky bargaining unit pension plan ("Eaton Plan") in all material respects. Dana's defined benefit pension plan will recognize service earned under the Eaton Plan for all plan purposes, including eligibility to receive benefits, vesting and benefit accrued, to the same extent as recognized for those purposes under the Eaton Plan and will provide benefit payments identical to those of the Eaton Plan.

(JA-AR00398).

The "Eaton Plan" in effect for the Henderson plant on the date the Agreement was executed was the 1989 Eaton Plan, while the 1982 Eaton Plan had been obsolete for nearly eight years. (JA-AR00001-00002). It follows that Dana was obligated to provide a plan "substantially similar . . . in all material respects" to the 1989 Eaton Plan, not the 1982 Eaton Plan. (JA-AR00398). However, whether or not Dana lived up to that obligation is irrelevant here. Plaintiffs may not unilaterally prosecute such a challenge as part of their appeal of a benefits determination under ERISA. As noted above, the Union is not a party to this action. Nor, the Court observes, is there anything in the record suggesting that the Union has even alleged such a breach. Accordingly, the Court declines to address the Plaintiffs' claims regarding the alleged priority of the 1982 Eaton Plan provisions.

B.  The Summary Plan Description

The SPD contains two provisions regarding the offset of pension benefits against Social Security disability benefits. The first appears under the heading "Other Benefit Deductions" on page eighty-two of the 1998 Dana SPD. That provision informs employees:

> Your basic pension is payable, while you are retired, without any reduction for commencement of pension payments prior to the date on which you attain age 65. *This amount may be reduced by* the amounts (if any) you receive on account of injury or occupational disease from funds to which Dana is required to contribute, such as [a] Worker's Compensation benefit, a *Federal Social Security Benefit[ ] for Disability* or a Federal Social Security Benefit for Age. *If Social Security is delayed, then paid retroactively, you'll be required to refund any pension overpayment to the pension fund.*

(JA-AR00591) (emphasis added).

At the same time, however, under the "Calculating A Disability Pension" section on page

ninety-four, the 1998 Dana SPD provides that:

> If you are eligible after retirement for . . . . Government disability benefits, *other than Federal Social Security*; [t]he portion of such benefits provided through taxes, premiums or other payments made by or at the expense of the Corporation will be deducted from your pension benefits otherwise payable under the Plan . . .

(JA-AR00603) (emphasis added).

Thus, the two provisions are directly opposed to one another: the former permits pension offsets against Social Security disability benefits, while the latter proscribes them.

The Plaintiffs contend that the "Other Benefit Deductions" paragraph on page ninety-four is more generous than the provisions of the Dana Plan and therefore should be given preference. Although courts will uphold summary plan descriptions that are more generous to claimants than the plans themselves because employees tend to rely on such descriptions, see Lake v. Metropolitan Life Ins. Co., 73 F.3d 1372, 1379 (6th Cir. 1996); Edwards v. State Farm Auto Ins. Co., 851 F.2d 134, 136 (6th Cir. 1988), that rule is inapplicable here. In this case, the SPD is not more generous than the Plan; rather, it is ambiguous as to whether Social Security disability benefits may be offset against pension disability benefits because the two relevant provisions point in opposite directions.

In such circumstances, courts abandon the usual preference for SPD terms over Plan terms. The Sixth Circuit has explained that "[m]erely ambiguous" plan summary language "should not be permitted to trump unambiguous language in the plan itself." Foltice v. Guardsman Products, Inc., 98 F.3d 933, 938 (6th Cir. 1996). The point seems to be that such ambiguity in the SPD gives notice to employees to consult the authoritative Plan. According

8

to Article IV, Section 1 of the Dana Plan document, "a deduction *shall be made*, unless prohibited by law, from such benefits equivalent to all or any part of . . . disability benefits for which such [employees are] eligible by reason of any law of the United States or any political subdivision thereof." Dana Plan Article IV, Section 1 (emphasis added).  Thus, to the extent that the ambiguity in the SPD concerns whether the Plan provides for an offset against Social Security disability benefits here, the authorative language in the Plan provides Plaintiffs with an unambiguous answer.  Because the Plan language is clear, it takes precedence over the ambiguous language in the SPD.

B.  Plaintiffs' Claims Under Article IV, Section 1 of the Dana Plan

Plaintiffs next contend that the Committee's application of the exception to Article IV, Section 1 was arbitrary and capricious. (Plaintiffs' Brief, p. 36).  They essentially make two arguments.  First, they claim that the Committee's inconsistent application of the offset provision is rooted in ambiguity in the Dana Plan, and therefore the doctrine of contra preferentem applies to make the Committee's decision arbitrary and capricious.  Second, they contend that the Committee's decision to interpret "Retired Employee" as someone "who has already begun receiving an early retirement or similar pension from the Plan [that] subsequently files a claim for a social security disability benefit within his first two years of retirement" is abritrary and capricious, because it ignores how "Retired Employee" is defined in the Plan, and differs from the Plaintiffs' reading of the two-year portion of the offset exception.

9

1. Inconsistent Application and Contra Preferentem

Plaintiffs claim that the Committee's inconsistent application of the offset provision renders the Committee's decision to offset Plaintiffs' benefits arbitrary and capricious. In short, they argue that there is no logic in the Dana Plan's decision to offset the disability pensions of Hallmark, Duncan, and Skaggs when other retirees have not had such benefits offset by social security benefits. The Committee responded that it could not ignore a "clear" plan term "simply because that term has not been consistently enforced in the past." (Jt. App. 2, JA-AR00002). However, Plaintiffs contend that the term is not "clear" because it is subject to more than one interpretation, and the rule of contra proferentem, which provides that any ambiguities in plan language be construed against the drafting party, applies to prevent the Committee from using that ambiguity to deny Plaintiffs' appeal. See generally University Hospitals of Cleveland v. Emerson Elec. Co., 202 F.3d at 846-847.

After reviewing the relevant case law and considering the trust principles underlying ERISA, the Court concludes that the Sixth Circuit does not apply the doctrine of contra preferentem in cases where administrators are entrusted with discretion to interpret employee benefit plans. Nothing in ERISA, nor its legislative history, recommends the use of the common law contra proferentem rule of contract interpretation by a reviewing court to determine whether an ERISA plan administrator has abused its discretion in applying possibly ambiguous ERISA plan terms to a benefits claim. Quite the contrary. The Supreme Court's discussion of the matter in *Firestone* highlights the inherent tension between the contra proferentem contract rule and the ERISA basis for judicial review of administrative

benefits claims:

> ERISA abounds with the language and terminology of trust law. ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U.S.C. §§ 1101-1114, "codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts." Given this language and history, we have held that courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans." In determining the appropriate standard of review for actions under § 1132(a)(1)(B), we are guided by principles of trust law. Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable."

Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989) (citations omitted)

Applying the doctrine of contra preferentem in the case at bar would make the Plan Committee's discretion meaningless. It is for this reason that the Sixth Circuit and its sister circuits restrict the use of contra proferentem in the ERISA context to cases involving de novo review. See Peach v. Ultramar Diamond Shamrock, 229 F.Supp.2d 759, 766 (E.D. Mich. 2002) ("[A]lthough the application of the contra proferentem rule of construction may be quite appropriate under a de novo standard of review . . . it is inconsistent with a deferential review standard under which the plan administrator is given wide latitude to interpret plan language."), aff'd, 109 Fed. Appx. 711 (6th Cir. 2004); see, e.g., Deegan v. Continental Cas. Co., 167 F. 3d 502 (9th Cir.1999); I.V. Services of America, Inc. v. Trustees of American Consulting Engineers Council Ins. Trust Fund, 136 F. 3d 114 (7th Cir. 1998); Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F. 2d 580, 586 (1st Cir. 1993). In this case, the Plan Committee was given discretion, warranting deferential review, and the

doctrine of contra preferentem therefore does not apply.

    2.  The Offset Exception, Article IV, Section 1(b)

The Court next considers Plaintiffs' argument that the Committee's interpretation of the exception to the offset provision is arbitrary and capricious. Under the terms of the Plan, "no such deduction [i.e., benefit offset] shall be made with respect to any such benefit payments which result from a claim filed by a Retired Employee within the period of two consecutive years immediately following the date on which he loses his seniority under any applicable collective bargaining agreement." (JA-AR00430; JA-AR00687). The Plan Committee concluded that this provision "is intended to apply only when a 'Retired Employee' who has already begun receiving an early retirement or similar pension from the Plan subsequently files a claim for a Social Security disability benefit within his first two years of retirement." (JA-AR-00002). Because Plaintiffs filed for Social Security disability benefits before receiving their Dana Plan pension benefits, the Committee determined that they did not qualify for the exception.

Plaintiffs contend that the Committee's decision was arbitrary and capricious because it overlooked part of the definition of "Retired Employees." Under the terms of the Plan, a "Retired Employee" is a "former Employee who has retired from employment with the Corporation and is receiving or is eligible to receive pension benefits pursuant to the normal, early, or total and permanent disability retirement provisions of this Plan." (JA-AR00411). Plaintiffs focus on the words "is eligible to receive." They argue that the Committee disregarded this Plan language when it concluded that the offset exception only applied to

12

"a 'Retired Employee' who has *already begun* receiving [benefits]." (JA-AR-00002) (emphasis added).

The Court finds, however, that the Committee reasonably interpreted the offset provision. Although Plaintiffs would prefer the exception to create a two-year deadline before which any filed Social Security disability benefits would not be offset, the Plan plainly says otherwise. Article IV, Section 1(b) exempts only those "Retired Employees" who "file" within a "*period* of two years . . . *immediately following*" their loss of seniority. (JA-AR00430; JA-AR00687) (emphasis added). Contrary to Plaintiffs' contention, this means that the exception does not apply to all "Retired Employees," including those merely "eligible to receive benefits." (JA-AR00411) Rather, the exception applies only to a subset of "Retired Employees" who apply for Social Security disability benefits within two years *after* losing their seniority. This is presumably what the Committee meant when it said that the exception applied only to a "'Retired Employee' who has already begun receiving [benefits]," since (at least in this case) the loss of seniority triggered the receipt of benefits. (JA-AR-00002). Accordingly, the Committee's interpretation is rational in light of the Plan provisions and not arbitrary or capricious.

13

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motion for judgment on the record is **GRANTED** and the Plaintiffs' motion for judgment on the record is **DENIED**. **IT IS SO ORDERED**.

cc: Counsel of Record